IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOESEPH TOWNSEND,                          )
                                           )
          Plaintiff,                       )
                                           )
v.                                         )          Case No. 24-cv-1758-RJD
                                           )
                                           )
JAMES D. VAUGHN, *et al.*,                 )
                                           )
          Defendants.                      )

**ORDER**

**DALY, Magistrate Judge:**[1]

This matter is now before the Court on Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 70). For the reasons set forth below, Defendants' motion is **GRANTED**.

**Background**

Plaintiff Joeseph Townsend, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Shawnee Correctional Center ("Shawnee"). (Doc. 1; Doc. 10, p. 1). Plaintiff alleged violation of his First, Eighth, and Fourteenth Amendment rights throughout a series of events from November 2023 to February 2024, and beyond. (Doc. 10, p. 1). Following threshold review of the Complaint and the

---

[1] This matter has been assigned to the undersigned to conduct all proceedings, including the trial and final entry of judgment, through the parties' consent pursuant to  28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 56).

Amended Complaint, and the substitution of parties, Plaintiff is proceeding on an Eighth Amendment excessive force or failure to protect claim against Defendants Vaughn, Horn, and Spivey for their actions on December 3, 2023, in the dietary unit (Claim 2). (Docs. 10, 39, 66).

Specifically, Plaintiff made the following allegations in the Amended Complaint regarding this remaining claim. On December 3, 2023, at around 5:00 p.m., Plaintiff, who had a slow-eat permit, attended dinner and sat in an area designated for those with such a permit. (Doc. 64-1, p. 6). When Plaintiff was halfway through his meal, Defendant Vaughn told him to leave, even after Plaintiff indicated he had a slow-eat permit. As Vaughn approached Plaintiff, Defendant Spivey (a dietary supervisor) also approached. Plaintiff believed Spivey knew him and knew of his slow-eat permit from months of seeing him sit in that area, so he expected Spivey to clarify the situation. Instead, Spivey "snatched" his tray. Spivey, Vaughn, and Horn then grabbed Plaintiff with the intent to cuff him. During this interaction, Vaughn twice attempted a headlock, which Plaintiff admits he maneuvered out of both times. Vaughn then threw a punch, which Plaintiff successfully dodged. (Doc. 64-1, pp. 6-7). Once Plaintiff was restrained on the ground, Vaughn directed Horn and the others present to obstruct the camera view and then applied excessive force by punching Plaintiff seven times until he drew blood. Plaintiff faults Horn and Spivey for failing to intervene. (Doc. 64-1, p. 7). As a result of the altercation, Plaintiff was issued a ticket and sent to restrictive housing. (*Id.*).

On January 29, 2026, Defendants moved for summary judgment on the issue of exhaustion of administrative remedies. (Doc. 70). Defendants argue that Plaintiff submitted only one grievance relevant to this action, an unnumbered grievance, dated March 4, 2024. (Doc. 71-2, pp. 45-46). However, Plaintiff never filed that grievance at the facility level; instead, it was sent

directly to the ARB. The ARB denied the grievance because Plaintiff had not attached his original grievance and the facility-level response. Defendants also pointed to Grievance K19-24-03-54, dated March 1, 2024, in which Plaintiff grieved procedural defects in the disciplinary ticket he was issued for the December 3, 2023, incident, but did not discuss Defendants' use of excessive force or their failure to protect Plaintiff on that day. Doc. 71-6, pp. 59-61.

Plaintiff filed an Affidavit in opposition to the motion. (Doc. 73) Plaintiff did not dispute that he did not comply with the grievance process, but he argued he was thwarted from doing so. Specifically, he stated that he submitted three grievances regarding the December 3, 2023, use of excessive force and failure-to-protect claim, but all grievances disappeared and went unanswered. Plaintiff stated that he handed the first grievance to an unnamed correctional officer in the first week of January, while housed at the Shawnee segregation unit. On his way to the shower later that night, Plaintiff found the grievance left on a table outside his cell and placed it in the grievance box. Because he did not receive a response within a week, he submitted a request slip regarding the grievance's status, which also went unanswered for a week. Plaintiff then resubmitted the same grievance, as well as a follow-up request slip a week later, but did not receive any response. He repeated the same process of refiling the grievance and following up within a week, one more time. Because Plaintiff did not receive any response to the three grievances or the three follow-up request slips, he drafted the March 4, 2024, grievance. He mailed it directly to the ARB, which denied it due to Plaintiff's failure to attach the original grievance and the facility-level response. Thereafter, Plaintiff drafted a letter describing the December 3, 2023, incident and his efforts to exhaust, and mailed it to the IDOC Director, Latoya Hughes, and the John Howard Association. Plaintiff attested that in response to his letter, "both entities responded and came to [his] cell in Shawnee

CC. seg." (Doc. 73, p. 1). Plaintiff attached to his Affidavit only the grievance that he sent to the ARB and the ARB's denial. There is no documentation of the missing grievances or the letters to Director Hughes or the John Howard Association.

***Pavey Hearing***

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on April 9, 2026. (Doc. 79). Plaintiff appeared and testified at the hearing. He did not dispute that he did not fully exhaust any grievance as to his Eighth Amendment excessive force and failure to protect claim. He argued, however, that he was thwarted in his efforts to exhaust his grievances by Shawnee staff who destroyed or failed to log them. He clarified that while some of his grievances involving immaterial issues were being logged in the system and properly processed, those related to "serious matters" were not. Plaintiff then substantially reiterated the allegations in his Affidavit, but with some inconsistencies. First, he stated that he filed his first missing grievance on December 24 or 25, 2023, rather than in the first week of January 2024. Further, he described that he sent the letters to Director Hughes and the John Howard Association before, rather than after, he filed the March 4, 2024, grievance to the ARB. He further testified that he submitted those three missing grievances after he had first filed a grievance challenging the disciplinary ticket issued to him regarding the December 3, 2023, incident. He testified that he did not recall filing a grievance regarding that ticket in March 2024. Plaintiff further could not identify, by name or appearance, the correctional officer to whom he handed his first missing grievance. He testified that he might or might not have copies of some of the missing grievances, but he would have to check his record.

Defendants called Ryan Hughes, Grievance Officer at Shawnee, as a witness. Hughes explained that Shawnee has a three-level grievance process. He testified that inmates at the

Shawnee segregation unit must submit their grievances directly to the grievance box, which they can access by requesting the officers to bring it to their cell door or by asking to be escorted to it. He explained that the Grievance Coordinator collects the grievances from the grievance boxes, codes them, records them in the Grievance Log, and then sends a receipt to the inmate through the institutional mail within one or two days. Hughes testified that, based on his review of the Grievance Log, which is maintained in the regular course of business, Plaintiff submitted 14 grievances from December 2023 through March 2024. In response to Plaintiff's cross-examination, Hughes testified that he never witnessed any Grievance Office personnel deliberately failing or delaying logging a grievance in the system. However, delays may occur when emergency grievances need to be prioritized.

**Analysis**

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir.

2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey*, 544 F.3d at 742; *Roberts v. Neal*, 745 F. 3d 232, 236 (7th Cir. 2014).[2]

***Exhaustion Requirement***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

An inmate in IDOC custody must first submit a written grievance within 60 days of discovering the incident, occurrence, or problem to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not

---

[2] Recently, the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460 145 S. Ct. 1793, 222 L. Ed. 2d 108 (2025). Specifically, the Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id*. at 479. Here, the issue of exhaustion is not intertwined with the merits of Plaintiff's underlying claim because Plaintiff does not argue that any of the Defendants obstructed his attempts to exhaust his administrative remedies. Thus, *Perrtu* is not applicable.

resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer ("CAO") — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. § 504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the CAO's decision in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there is a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, allowing for expedited processing by responding directly to the offender. *Id.* The ARB shall also expedite processing of an appeal to an emergency grievance. *Id.* § 504.850. Inmates may further submit certain types of grievances directly to the ARB, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* § 504.870.

At the same time, inmates need only exhaust the administrative remedies available to them. *Dole*, 438 F.3d at 809. Prison officials may not utilize the exhaustion process to unfairly prejudice inmates, and an administrative remedy will be deemed "'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* (quoting *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dale v.*

*Lappin,* 376 F.3d 652, 656 (7th Cir. 2004)). It is the defendant's burden to show "beyond dispute" that the administrative remedies were available. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). The Seventh Circuit has cautioned that the unavailability "exception is meant to be narrow." *Wallace v. Baldwin*, 55 F.4th 535, 543 (7th Cir. 2022).

**Discussion**

Here, there is no dispute that Plaintiff has failed to exhaust his administrative remedies. The only disputed issue is whether the grievance process was available to Plaintiff at the relevant time with respect to his excessive force and failure to protect claim, given the Shawnee staff's alleged efforts to thwart his attempts to file a grievance. The Court finds that Plaintiff's assertion regarding his filing of the three missing grievances and the Shawnee staff's alleged interference with his exhaustion efforts is not credible. The Court reaches that conclusion based on the inconsistencies between Plaintiff's testimony, his Affidavit, and the record.

First, Plaintiff testified that the Grievance Office logged and processed only his grievances on immaterial issues, but not those on serious matters. However, the Grievance Log shows that Plaintiff submitted 14 grievances between December 2023 and March 2024. Those grievances included Plaintiff's complaints regarding staff misconduct on January 4, 2024, (K19-24-1-100, dated January 10, 2024, Doc. 71-6, pp. 56-57) and on February 7, 2024, (K19-24-02-129, dated February 27, 2024, Doc. 71-6, p. 48). It also included a grievance regarding mistakes on the disciplinary ticket issued to him on December 3, 2023, in which Plaintiff accused Shawnee officers, but not the Defendants in this case, of malice and retaliatory conduct (K19-24-03-54, dated March 1, 2024, Doc. 71-6, pp. 59-61). This undermines Plaintiff's testimony that only his

insignificant grievances were logged and processed, and it further establishes that the grievance process was available to Plaintiff during the relevant timeframe.

Second, in the March 4, 2024, grievance that he sent directly to the ARB, Plaintiff grieved a series of events showing staff misconduct running from December 3, 2023, through February 7, 2024. (Doc. 71-2, pp. 45-46). Plaintiff discussed each of those incidents in a separate paragraph. In most of the paragraphs, Plaintiff referenced prior efforts to exhaust his grievances at the facility level, including complaints that some of his grievances and request slips disappeared. (*Id.*). However, Plaintiff did not reference any efforts to exhaust his grievances in the paragraph discussing the December 3, 2023, incident. The grievance is also silent as to any letters to the John Howard Association and to Director Hughes, and their alleged visit to Shawnee in response thereto.

Third, Plaintiff testified that he originally grieved only the disciplinary ticket issued to him for the December 3, 2023, incident, and thereafter, between December 24, 2023, and early March 2024, he filed the three missing grievances regarding his excessive force and failure-to-protect claim. He testified that he did not submit another grievance regarding the ticket in March 2024. However, Plaintiff's testimony is contradicted by the record that shows Plaintiff did not grieve the disciplinary ticket related to the December 3, 2023, incident until March 1, 2024. (See Grievance K19-24-03-54, dated March 1, 2024, Doc. 71-6, pp. 59-61).

Finally, Plaintiff's hearing testimony was inconsistent with his Affidavit regarding the date he submitted his first missing grievance and the order he sent the letters to Director Hughes and the John Howard Association. Plaintiff was unable to provide copies of his letter to Director Hughes and the John Howard Association or his mail receipts, which would corroborate his

testimony. Plaintiff's testimony that he might or might not have copies of the missing grievances and that he would have to check his record also raises questions. Plaintiff had several months between the filing of the motion and the hearing to check his record to confirm the existence of this crucial evidence.

Based on the inconsistencies between Plaintiff's testimony, his Affidavit, and the record, the Court finds his claims regarding the three missing grievances non-credible. Defendants have met their burden of demonstrating that the grievance process was available to Plaintiff and that he failed to use it before initiating this lawsuit. Because Plaintiff failed to exhaust his administrative remedies, his claims in this suit are dismissed without prejudice.

## Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 70) is **GRANTED**. This case is **DISMISSED without prejudice,** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: April 13, 2026**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**